UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CATHI PRINCIPI and MARK PRINCIPI,

Plaintiffs,

-vs-  Case No. 6:04-cv-476-Orl-JGG

SURVIVAIR, INC.,

Defendant.

ORDER

This cause came on for hearing on August 17, 2005, on the pending motion for summary judgment:

| | |
|---|---|
| MOTION: | DEFENDANT SURVIVAIR, A DIVISION OF BACOU-DALLOZ USA SAFETY, INC.'S MOTION FOR SUMMARY JUDGMENT (Doc. No. 52) |
| FILED: | June 17, 2005 |

**THEREON** it is **ORDERED** that the motion is **DENIED**.

I.  INTRODUCTION

Defendant Survivair moved for summary judgment on all counts of Plaintiff's Cathi and Mark Principi's complaint. Cathi Principi ("Plaintiff" or "Principi") brought this action for negligence and strict liability as to the design and manufacture of the MightyLight® backpack, a component part of the Panther Self-Contained Breathing Apparatus. Her husband, Mark, sued for loss of consortium.

During all relevant times, Space Gateway Support, a contractor providing firefighting services at Kennedy Space Center, employed Plaintiff as a paramedic/firefighter. Plaintiff's employer required

her to undergo annual training/competency tests, also known as Combat Task Tests ("CTT"). The CTT consists of ascending and descending 75 ft. of stairway while carrying a 14 lb. simulated high rise pack; driving a 150 lb. railroad (Keiser machine) 5'2" using an 8 lb. sledgehammer; and lifting, dragging or carrying a 170 lb. mannequin a distance of 85 ft. (Defendant's Exh. A, Docket 52 at 2.) Plaintiff alleges that when she performed the Keiser machine portion of the CTT on April 6, 2000, she was struck repeatedly on the back of her head by the backpack bottle, and on the back of her neck by the top of the backpack frame. (Defendant's Exh. B, Answer No. 3, Docket 52 at 12.) Plaintiff further alleges that when the backpack struck her neck, she suffered severe and permanent physical injuries, including injuries to her neck, right shoulder, back and left hand. (Defendant's Exh. B, Answer No. 5, Docket 52 at 12.)

Survivair argues that the Court must exclude Principi's experts because the methodology underlying their opinions fails to meet the standards set forth in *Daubert v. Merrill Dow Pharms.*, 509 U.S. 579 (1993). Because Plaintiff must use expert testimony to prove a defective product, *Alexander v. Danek Medical, Inc.*, 37 F. Supp. 2d 1346, 1349 (M.D. Fla. 1999), Survivair argues that Principi cannot prove her case and that the Court should grant summary judgment. At the hearing, Survivair limited its argument to Principi's inability to establish the element of causation for either her negligence or strict liability claims.[1] Further, Survivair specifically focused its argument on Dr. Proctor's opinion that "Survivair's failure to modify the fundamental design of the Panther SCBA

---

[1] The elements of a cause of action for strict liability for a defective product are: (1) the manufacturer's relationship to the product in question; (2) the defect and unreasonably dangerous condition of the product; (3) the existence of the proximate causal connection between such condition and the user's injuries or damages; and (4) that the product reached the plaintiff without substantial change in condition. The elements of a cause of action for negligence are: (1) a legal duty on the part of the defendant towards the plaintiff under the circumstances; (2) a breach of that duty by the defendant; (3) the defendant's breach of duty was both the actual and proximate cause of the plaintiff's injuries; and (4) the defendant suffered damages as a result of the breach. *Humphreys v. Gen. Motors Corp.*, 839 F. Supp. 822, 826, 829 (N.D. Fla. 1993).

back plate so as not to strike a user's neck when using the Panther SCBA in ways known and expected to Survivair resulted in injury to Ms. Principi." For purposes of the summary judgment motion only, Survivair does not contest the alleged design defect.

## II. Legal Standards

### A. Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the initial burden of showing the Court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Jeffery v. Sarasota White Sox*, 64 F.3d 590, 593 - 94 (11th Cir. 1995); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991). A moving party discharges its burden on a motion for summary judgment by showing the Court that there is an absence of evidence to support the non-moving party's case. *Celotex*, 477 U.S. at 325. Rule 56 permits the moving party to discharge its burden with or without supporting affidavits, and to move for summary judgment on the case as a whole or on any claim. *Id.* When a moving party has discharged its burden, the non-moving party must then "go beyond the pleadings," and by its own affidavits or by "depositions, answers to interrogatories, and admissions on file," designate specific facts showing that there is a genuine issue for trial. *Id.* at 324.

In determining whether the moving party has met its burden of establishing that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law, the Court

must draw inferences from the evidence in the light most favorable to the non-movant, and resolve all reasonable doubts in that party's favor. *Samples on behalf of Samples v. City of Atlanta*, 846 F.2d 1328, 1330 (11th Cir. 1988). The Eleventh Circuit has explained the reasonableness standard:

> In deciding whether an inference is reasonable, the Court must "cull the universe of possible inferences from the facts established by weighing each against the abstract standard of reasonableness." The opposing party's inferences need not be more probable than those inferences in favor of the movant to create a factual dispute, so long as they reasonably may be drawn from the facts. When more than one inference reasonably can be drawn, it is for the trier of fact to determine the proper one.

*Jeffery v. Sarasota White Sox*, 64 F.3d 590, 594 (11th Cir. 1995), *quoting WSB-TV v. Lee*, 842 F.2d 1266, 1270 (11th Cir. 1988).

Thus, if a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant the summary judgment motion. *Augusta Iron and Steel Works v. Employers Ins. of Wausau*, 835 F.2d 855, 856 (11th Cir. 1988). A dispute about a material fact is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. On a summary judgment motion the Court may not weigh the credibility of the parties. *See Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1531 (11th Cir. 1987). If the determination of the case rests on which competing version of the facts or events is true, the case should be presented to the trier of fact. *Id.*

### B.  Material Submitted in Opposition to Summary Judgment

Federal Rule of Civil Procedure 56(c) provides that the party making a motion for summary judgment may submit affidavits to support its argument as to the absence of a genuine issue of material fact. Rule 56(e) provides as follows regarding the materials that the non-movant must submit in response:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

The non-movant must adduce significant probative evidence that would be sufficient for a jury to find for the non-movant. *LaChance v. Duffy's Draft House,* 146 F.3d 832, 834 (11th Cir. 1998), *citing Liberty Lobby, Inc.,* 477 U.S. at 249. A reviewing court generally cannot consider inadmissible hearsay evidence in opposition to a summary judgment motion. *Macuba v. Deboer,* 193 F.3d 1316, 1322 (11th Cir. 1999). In considering a motion for summary judgment, a reviewing court must consider all the proffered evidence and cannot disregard a party's affidavit merely because it conflicts to some degree with an earlier deposition. *Kennett-Murray Corp. v. Bone,* 622 F.2d 887, 893 (5th Cir. 1980). However, when a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with

an affidavit that merely contradicts, without explanation, previously given clear testimony. *Van T. Junkins and Assoc., Inc. v. U.S. Indus., Inc.*, 736 F.2d 656, 657 (11th Cir. 1984).

**III. Analysis**

Based on Survivair's statements at the hearing that it was not contesting defective design for the purposes of the summary judgment motion, resolution of the motion turns on whether there is significant probative evidence that would be sufficient for a jury to find that the Panther SCBA back plate caused Plaintiff's injury. The Court finds there is significant probative evidence to withstand summary judgment.

Plaintiff testified that during the performance of the Keiser machine portion of the CTT, the bottle that was on the Panther backpack hit the back of her head and neck and that she felt a pop and pain. [Principi depo., pp. 93:10-17; 94:18-23; 95:18-22; 96:14-17; 149:12-17, Plaintiff's Exh. 9, Docket 62 at 6.] Plaintiff told her treating physician, Dr. Bland, that it was the pack that had hit her in the neck. [Bland depo., p. 20:19-25, Defendant's Exh. 1, Docket 52 at 7.] In response to interrogatories, Principi stated that she "was repeatedly struck on the back of her head by the Panther backpack bottle, and the back of her neck by the top of the backpack frame." [Defendant's Exh. B, Answer #3, Docket 52 at 12.] Further, the video recording of the simulation conducted by Survivair's expert, Dr. Hollis, showed that the upper portion of the backpack frame making contact with the model's upper neck. [Docket 71.]

On summary judgment, the Court cannot resolve which of Plaintiff's statements is the correct one. Rather, the Court must construe the evidence in the light most favorable to the non-moving party. A jury could find that Plaintiff was imprecise in her deposition by failing to state that she was

hit both by the bottle and by the backpack, and that her interrogatory answers are consistent with other statements made about the cause of her injury. Based on the above evidence, there is a triable issue of fact whether the Panther backpack plate caused Plaintiff's injuries. The Court, therefore, denies summary judgment.

### IV. Defendant's *Daubert* Challenge to Plaintiff's Experts

This Court need not decide Defendant's *Daubert* challenge to Plaintiff's experts in order to resolve the summary judgment motion. Nevertheless, the Court conducted a lengthy hearing on the *Daubert* issues and expended considerable judicial resources evaluating Defendant's argument. In the interests of judicial economy, the Court now resolves the *Daubert* issues raised in Defendant's summary judgment motion because the issues are likely to recur at trial.

#### A. The Law

Federal Rule of Evidence 702 states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

*Daubert* requires the trial court to act as a gatekeeper to insure that speculative and unreliable opinions do not reach the jury. *Daubert*, 509 U.S. 579, 589 n. 7, 597. As a gatekeeper, this court must do "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Id.* at 593-94. The Supreme Court has made it clear that *Daubert's* gatekeeping

obligation applies to all expert testimony, not just scientific experts, and "reemphasized that an expert, whether basing testimony upon professional studies, or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kuhmo Tire Co. Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999).

The Supreme Court set forth the following factors which are to be considered in determining the reliability of scientific expert testimony:

1) whether the expert's technique or theory can be or has been tested;
2) whether the technique or theory has been subject to peer review and publications;
3) the known or potential rate of error of the technique or theory when applied;
4) the existence and maintenance of standards and controls; and
5) whether the technique or theory has been generally accepted in the scientific community.

*Daubert*, 509 U.S. at 593-94. The Court made clear that these factors were not to be rigidly applied, but were instead to serve as guidelines for federal district courts applying Rule 702. The Court said, "[t]he inquiry envisioned by Rule 702 is, we emphasize, a flexible one," *id.* at 594; "[m]any factors will bear on the inquiry, and we do not presume to set out a definitive checklist or test." *Id.* at 593.

The decision in *Kumho Tire* elaborated on the flexible nature of the inquiry. There the Court pointed out that "*Daubert's* list of specific factors neither necessarily nor exclusively applies to all experts or in every case." *Kumho Tire*, 526 U.S. at 141. Whether the *Daubert* factors are even pertinent to assessing reliability in a given case will "depend[ ] on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Id.* at 150 (internal marks omitted). Because the applicability of the *Daubert* factors depends on the individual facts in a particular case, the Court said that it could:

> neither rule out, nor rule in, for all cases and for all time the applicability of the factors mentioned in Daubert, nor [could it] now do so for subsets of cases categorized by category of expert or by kind of evidence. Too much depends upon the particular circumstances of the particular case at issue.

*Id.* at 150. This means that expert testimony that does not meet all or most of the *Daubert* factors may sometimes be admissible. The burden of establishing qualification, reliability and helpfulness rests on the proponent of the expert opinion. *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004).

### B.     Application to Dr. Proctor's Opinion

Dr. Proctor expressed seven opinions in his report, but Defendant challenges only one: that "Survivair's failure to modify the fundamental design of the Panther SCBA back plate so as not to strike a user's neck when using the Panther SCBA in ways known and expected to Survivair resulted in injury to Ms. Principi." As discussed below, Dr. Proctor's methodology was both scientifically valid and properly applied to the facts in issue.

Dr. Proctor holds a Ph.D. in Mechanical Engineering and has taught college level courses in engineering design and analysis, biometrics and human anatomy for engineers. He also has conducted research and investigations related to biomechanics of the human body. [Dr. Proctor's expert report, Defendant's Exh. C, Docket 52.] Dr. Proctor's opinion in this case was formulated by performing a kinematic analysis.[2] In performing this analysis, Dr. Proctor fitted the backpack on Plaintiff and one other similarly sized person, looked at the relative positions and motion of the backpack and measured distances between the backpack to the head and neck and the location of the tank to the head. [Proctor

---

[2] As defined in DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 820 (J. Friel 25th ed. 1974), 'kinematics' is 'that phase of mechanics which deals with the possible motions of a material body.'

depo., pp. 92:1-11, Defendant's Exh. D, Docket 52 at 24.] Dr. Proctor also examined the dimensions of the backpack and the dimensional information provided by Survivair. *Id.* Additionally, Dr. Proctor photographed his assistant while she simulated the motion of swinging a sledgehammer and made measurements from the photographs. [Proctor depo., 122:23-123:10; 134:13-25, Defendant's Exh. D, Docket 52.] Dr. Proctor did not perform any tests to determine that the Plaintiff's cervical spine injuries were due to the backpack. [Proctor depo., 90:4-7, Defendant's Exh. D, Docket 52.]

Defendant does not challenge Dr. Proctor's qualifications to perform a kinematic analysis, and it accepts that kinematic analysis is a scientifically recognized form of evaluation. Defendant argues, however, that a kinematic analysis alone is insufficient under *Daubert* and that Dr. Proctor also should have measured the force of the backpack's contact with the back of the neck. Defendant contends that without a measurement of the force involved, Dr. Proctor cannot establish that the backpack hit Plaintiff hard enough to cause the alleged cervical injury. In response, Dr. Proctor states that no one can know the amount of force required to cause Plaintiff's injury, because no one can know the Plaintiff's susceptibility to injury. [Proctor depo., 93:3-6, Defendant's Exh. D, Docket 52 at 25.]

Dr. Proctor's analysis shows that when Plaintiff wore the Survivair Panther SCBA in the correct position, "the top of the back plate aligns with the area of Ms. Principi's injured neck." [Proctor Report, Defendant's Exh. D, Docket 52 at 23.] It is apparent that Dr. Proctor's opinion that the SCBA caused Plaintiff's injury is based on the alignment of the back plate with the injured area. Dr. Proctor's methodology for determining the alignment of the back plate and its motion was scientifically valid and the conclusion that the back plate caused Plaintiff's injury was a proper

application to the facts in this case. The Court, therefore, denies the *Daubert* challenge to Dr. Proctor's opinion.

### C. Application to Dr. Bland's Opinion

Dr. Linda Bland initially saw Plaintiff to perform an independent medical examination ("IME") of Plaintiff for the employer's workers' compensation carrier, but she subsequently became Plaintiff's treating physician. [Bland Depo. I, 14:24-15:4, 28:23-29:16, 31: 6-9, Docket 52 at 6, 9. Bland depo. II, 32:14-24, Docket 62 at 11.] Defendant challenges Dr. Bland's opinion that the backpack hit Plaintiff's head during the performance of the CTT, which caused Plaintiff's cervical disk herniations. Defendant argues that Dr. Bland's opinion is speculative because Dr. Bland failed to conduct testing to rule out other possible causes of Plaintiff's neck condition. Defendant also argues that Dr. Bland failed to review Plaintiff's medical records before Plaintiff's accident to determine whether Plaintiff had a pre-existing condition, illness or disease that may have caused her neck condition. In sum, Defendant argues that Dr. Bland's reliance upon Plaintiff's statements regarding the cause and extent of her injury fails to rise to the level of scrutiny or intellectual rigor required by an expert.

A treating physician is not an "expert" witness if he or she testifies about observations based on personal knowledge, including the treatment of a party. *See Davoll v. Webb*, 194 F.3d 1116, 1138 (10th Cir.1999). A doctor's lay opinions are analyzed pursuant to Fed. R. Evid. 701. Certainly, Dr. Bland's diagnosis that Plaintiff suffered disk herniations and the treatment and prognosis for her condition fall into the lay opinion category.

Dr. Bland's challenged opinion, however, goes beyond diagnosis of Plaintiff's ailment and treatment, but extends to the cause of Plaintiff's injury. Dr. Bland did not need to determine the cause of Plaintiff's injury to treat her, and Dr. Bland's opinion that the backpack caused Plaintiff's injury crosses over to the field of expert testimony that must meet the standards of Fed. R. Evid. 702. *See United States v. Henderson*, 409 F.3d 1293, 1300 (11th Cir. 2005) (treating physician's diagnosis of injury itself was permissible lay testimony, but statement as to cause of injury was a hypothesis, and the ability to answer hypothetical questions is "[t]he essential difference between expert and lay witnesses") (*quotations omitted*).

The Court routinely begins its analysis of the reliability of the expert's opinion by reviewing the expert report prepared pursuant to Fed. R. Civ. Proc. 26(a)(2). Rule 26(a)(2) requires the expert to prepare a report that contains *inter alia* a complete statement of all opinions to be expressed and the basis and reasons therefor. The Case Management and Scheduling Order restricts expert testimony on direct examination at trial "to the opinions, bases, reasons, data and other information disclosed in the written expert report. . . ." Docket 19 at 3.

The only report the parties submitted to the Court was Dr. Bland's IME report in which Dr. Bland admits she did not express an opinion regarding Plaintiff's cause of injury. [Bland Depo. I, 33:8-21, Docket 52 at 10.] As no party filed Dr. Bland's Rule 26(a)(2) expert report, the Court ordered its filing. Docket 77. Plaintiff was unable to comply with the Court's order due to Dr. Bland's absence from her office, and requested more time. Docket 78. The Court interpreted Plaintiff's request for an extension to mean that Plaintiff failed to deliver Dr. Bland's report to Defendant by March 15, 2005, the extended deadline for disclosure of Plaintiff's experts' reports.

Docket 43. The Court, therefore, denied the requested extension.[3] Plaintiff did not make a timely motion for another extension of the expert report disclosure date and the Court will not grant an extension now. Because Plaintiff did not timely disclose Dr. Bland's expert report, the Court precludes Dr. Bland from testifying on direct examination at trial regarding the cause of Plaintiff's injury. Conducting a *Daubert* analysis of Dr. Bland's opinion regarding the cause of Plaintiff's injury, therefore, is unnecessary.

## CONCLUSION

The Court finds a triable issue of fact exists that precludes the entry of summary judgment. The Court has treated the summary judgment motion as incorporating a *Daubert* motion. The Court denies the *Daubert* motion as to Dr. Proctor. The Court need not conduct a *Daubert* analysis of Dr. Bland's opinion that the backpack caused Plaintiff's injury. Dr. Bland failed to prepare an expert report as required by Rule 26(a)(2) and Plaintiff failed to disclose the expert report as required by the Case Management Scheduling Order. Dr. Bland may not express an expert opinion on direct examination at trial as to the cause of Plaintiff's injury.

---

[3] The Court's interpretation that Plaintiff failed to deliver Dr. Bland's report to Defendant was bolstered by the fact that Defendant did not file the report with the Court, despite the Court's order that the parties jointly file the report. Defendant's failure to file the report, combined with Plaintiff's request for an extension of time, led the Court to believe that Defendant was unable to comply with the Court's order. The Court's interpretation subsequently was confirmed by Defendant, who informed the Court that Plaintiff did not identify Dr. Bland as an expert until September 20, 2005, and that Plaintiff did not disclose Dr. Bland's expert report. Docket 80.

DONE and **ORDERED** in Orlando, Florida on October **18**, 2005.

JAMES G. GLAZEBROOK
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record