## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

CATHI PRINCIPI and MARK PRINCIPI,

     **Plaintiffs,**

-vs-            **Case No.  6:04-cv-476-Orl-JGG**

SURVIVAIR, INC.,

     **Defendant.**

---

## ORDER

This cause came on for hearing on August 17. 2005, on the pending motion in limine:

> **MOTION:**  **PLAINTIFF'S MOTION IN LIMINE (Doc. No. 55)**
>
> **FILED:**   **June 17, 2005**
>
> ---
>
> **THEREON** it is **ORDERED** that the motion is **GRANTED in part and DENIED in part**.

## I.  INTRODUCTION

Cathi Principi ("Plaintiff" or "Principi") brought this action for negligence and strict liability as to the design and manufacture of the MightyLight® backpack ("the backpack"), a component part of the Panther Self-Contained Breathing Apparatus.  During all relevant times. Space Gateway Support, a contractor providing firefighting services at Kennedy Space Center, employed Plaintiff as a paramedic/firefighter. Plaintiff's employer required her to undergo annual training/competency tests. also known as Combat Task Tests ("CTT").  The CTT consists of ascending and descending 75 ft. of stairway while carrying a 14 lb. simulated high rise pack: driving a 150 lb. railroad (Keiser machine)

5'2" using an 8 lb. sledgehammer; and lifting, dragging or carrying a 170 lb. mannequin a distance of 85 ft. (Defendant's Exh. A, Docket 52 at 2.) Plaintiff alleges that when she performed the Keiser machine portion of the CTT on April 6, 2000, she was struck repeatedly on the back of her head by the backpack bottle, and the back of her neck, by the top of the backpack frame. (Defendant's Exh. B, Answer No. 3, Docket 52 at 12.) Plaintiff further alleges that when the backpack struck her neck, she suffered severe and permanent physical injuries, including injuries to her neck, right shoulder, back and left hand. (Defendant's Exh. B, Answer No. 5, Docket 52 at 12.)

Plaintiff moves to preclude Defendant Survivair's designated expert, Dr. J. Marcus Hollis, from testifying in this matter. Dr. Hollis's report expresses nine opinions, including that the backpack was not defectively designed and that the backpack did not cause Plaintiff's injury.[1] Principi's motion in limine is twofold: (1) Dr. Hollis is not a licensed engineer within the State of Florida and, therefore, the Court must exclude his testimony because his services are illegal; and (2) his testimony fails to meet the standards set forth in *Daubert v. Merrill Dow Pharms.*, 509 U.S. 579 (1993).

---

[1] Dr Hollis's nine opinions are: (1) the Panther Self-Contained Breathing Apparatus (SCBA) was not defectively designed, developed, manufactured, marketed, assembled, tested, sold or distributed; (2) the Panther SCBA did not cause or substantially contribute to cause harm to plaintiff; (3) the MightyLight Backpack, a component part of the Panther SCBA, was not defectively or negligently designed, developed, or manufactured; and (4) the MightyLight Backpack, a component part of the Panther SCBA, did not cause or substantially contribute to cause harm to plaintiff; (5) the torn supraspinatus was more likely than not related to swinging a sledgehammer and moving a mannequin; (6) there is no biomechanical mechanism for the rotator cuff to be affected by the MightyLight backpack; (7) moving of the mannequin and the sledgehammer lifting were the predominent causes of cervical spine loading within the CTT event; (8) the energy of the backpack impinging is significantly less than that required and insufficient to produce multiple level spine injury; and (9) a cervical spine injury occurring during the CTT would have been more likely than not caused by the sledgehammer swinging and mannequin move. [Dr. Hollis's Report, Exh. H, Doc. 67 at 6.]

## II.   ANALYSIS

### A.   Dr. Hollis's Non-Licensure in Florida

Plaintiff argues that by acting as an expert here, Dr. Hollis violates Fla. Stat. § 471.031(1),

which provides that a person may not practice engineering unless licensed by the State of Florida. The

"practice of engineering" includes "offering engineering services to the public through a business

organization. . . ." Fla. Stat. § 471.023(1). "Engineering" is defined as:

> [A]ny service or creative work, the adequate performance of which
> requires engineering education, training and experience in the
> application of special knowledge of the mathematical, physical, and
> engineering sciences to such services or creative work as consultation,
> investigation, evaluation, . . . teaching of the principles and methods of
> engineering design[2] . . . any of which embraces such services or work,
> either public or private, in connection with any . . . industrial or
> consumer products . . . insofar as they involve safeguarding life, health,
> or property. . . .

Fla. Stat. § 471.005(7).  There is no dispute that Dr. Hollis offers engineering services to the public

through a business organization, that the State of Florida has not licensed him, and that his expert

testimony here requires engineering education, training and experience in the application of special

knowledge of the mathematical, physical, and engineering sciences.

The parties, however, dispute whether the above referenced Florida statutes apply to expert

opinions developed for use in litigation.  Defendant Survivair argues that the Florida statutes only

apply to professional engineers who make engineering decisions, reviews or recommendations to work

that could create a danger to the health, safety and welfare of the public.  Survivair contends that

---

[2]Survivair argues that instructors at post-secondary education institutions who teach the principles and methods of engineering are exempt from coverage. Fl. Stat. § 471.035. While this is accurate, other teachers apparently are subject to the licensure requirements.

because Dr. Hollis's opinions in this case could not endanger the health, safety or welfare of the public, his actions are outside the scope of the Florida statutes. Neither side cites any case law, nor could the Court find any, in which the litigants argued that the State of Florida must license an expert or else his work is "illegal."

In construing a statute, the district court first looks to the plain language of the statute. *See Albernaz v. United States*, 450 U.S. 333, 336 (1981); *accord, United States v. Veal*, 153 F.3d 1233, 1245 (11th Cir. 1998). Courts interpret words with their ordinary and plain meaning and assume that the legislature uses words in a statute as they are commonly understood. *See Veal*, 153 F.3d at 1245; *United States v. McLeod*, 53 F.3d 322, 324 (11th Cir.1995). The plain language of the statute is conclusive as clearly expressing legislative intent unless the resulting application would be "absurd" or "internal inconsistencies" must be resolved. *See United States v. Turkette*, 452 U.S. 576, 580 (1981); *Veal*, 153 F.3d at 1245. When statutory language is clear and unambiguous, it controls interpretation "absent a legislative intent to the contrary." *United States v. Grigsby*, 111 F.3d 806, 816 (11th Cir. 1997).

An expert retained solely for the purposes of performing analyses or expressing an opinion in litigation is not providing services that "involve safeguarding life, health, or property." Based on the plain language of Fla. Stat. § 471.005(7), Dr. Hollis is not performing engineering within the meaning of the statute and is not required to be licensed in the State of Florida to perform the expert services he rendered in this case.

Even if the Court were mistaken in ruling on this issue of first impression of Florida law, whether Dr. Hollis is a licensed engineer in the State of Florida or the State of Alabama has no bearing

on the admissibility of his testimony. Rather, the appropriate inquiry on qualifications is whether

Dr. Hollis is "an expert by knowledge, skill, experience, training, or education." Fed. R. Evid. 702.

Preclusion of an otherwise qualified expert for lack of license in his specialty in the State of Florida

is an abuse of discretion and amounts to reversible error. *See Rose v. State of Florida*, 506 So. 2d 467,

470-71 (Fla. Dist. Ct. App. 1, 1987). The Court, therefore, denies Plaintiff's motion in limine on the

grounds that Dr. Hollis is not a licensed engineer in the State of Florida.

B.    *Daubert* **Challenge**

Plaintiff argues that Dr. Hollis conducted a simulation of Plaintiff's injury that deviated from

the actual occurrence in several material ways. Plaintiff further argues that because all of Dr. Hollis's

expert opinions derive from this simulation, his opinions are unreliable and should be excluded

pursuant to *Daubert v. Merrill Dow Pharms.*, 509 U.S. 579 (1993).

1.    **The Law**

Federal Rule of Evidence 702 states:

> If scientific, technical, or other specialized knowledge will assist the
> trier of fact to understand the evidence or to determine a fact in issue,
> a witness qualified as an expert by knowledge, skill, experience,
> training, or education, may testify thereto in the form of an opinion or
> otherwise, if (1) the testimony is based upon sufficient facts or data, (2)
> the testimony is the product of reliable principles and methods, and (3)
> the witness has applied the principles and methods reliably to the facts
> of the case.

*Daubert* requires the trial court to act as a gatekeeper to insure that speculative and unreliable

opinions do not reach the jury. *Daubert*, 509 U.S. 579, 589 n. 7, 597. As a gatekeeper, this court must

do "a preliminary assessment of whether the reasoning or methodology underlying the testimony is

scientifically valid and of whether that reasoning or methodology properly can be applied to the facts

in issue." *Id.* at 593-94. The Supreme Court has made it clear that *Daubert's* gatekeeping obligation

applies to all expert testimony, not just scientific experts, and "reemphasized that an expert, whether

basing testimony upon professional studies, or personal experience, employs in the courtroom the

same level of intellectual rigor that characterizes the practice of an expert in the relevant field."

*Kuhmo Tire Co. Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999).

The Supreme Court set forth the following factors that are to be considered in determining the

reliability of scientific expert testimony:

1)      whether the expert's technique or theory can be or has been tested;
2)      whether the technique or theory has been subject to peer review and publications;
3)      the known or potential rate of error of the technique or theory when applied;
4)      the existence and maintenance of standards and controls; and
5)      whether the technique or theory has been generally accepted in the scientific community.

*Daubert*, 509 U.S. at 593-94. The Court made clear that these factors were not to be rigidly applied,

but were instead to serve as guidelines for federal district courts applying Rule 702. The Court said,

"[t]he inquiry envisioned by Rule 702 is, we emphasize, a flexible one," *id.* at 594; "[m]any factors

will bear on the inquiry, and we do not presume to set out a definitive checklist or test." *Id.* at 593.

The decision in *Kumho Tire* elaborated on the flexible nature of the inquiry. There the Court

pointed out that "*Daubert's* list of specific factors neither necessarily nor exclusively applies to all

experts or in every case." *Kumho Tire*, 526 U.S. at 141. Whether the *Daubert* factors are even

pertinent to assessing reliability in a given case will "depend[ ] on the nature of the issue, the expert's

particular expertise, and the subject of his testimony." *Id.* at 150 (internal marks omitted). Because the

applicability of the *Daubert* factors depends on the individual facts in a particular case, the Court said

that it could:

> neither rule out, nor rule in, for all cases and for all time the
> applicability of the factors mentioned in Daubert, nor [could it] now do
> so for subsets of cases categorized by category of expert or by kind of
> evidence. Too much depends upon the particular circumstances of the
> particular case at issue.

*Id.* at 150. This means that expert testimony that does not meet all or most of the *Daubert* factors may

sometimes be admissible.  The burden of establishing qualification, reliability and helpfulness rests

on the proponent of the expert opinion.  *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir.

2004).

### 2.    Application to Dr. Hollis's Opinions

Plaintiff contends that all of Dr. Hollis's opinions are based on a simulation of Plaintiff's

wearing of the backpack while swinging the 8-pound sledgehammer during the CTT.  Plaintiff argues

that Dr. Hollis's opinions are unreliable because the simulation deviated from the actual occurrence

in several material ways.  Defendant responds that Dr. Hollis did more than conduct the simulation,

but he also reviewed pleadings, discovery, experts' reports, medical records, treatises, and conducted

an analysis of and testing of the backpack, and that his opinions were based on his education, training,

and experience as a biomechanical engineer.  Dr. Hollis's expert report does not differentiate his

opinions based on the simulation versus other studies he performed.  Nor does Defendant argue that

Dr. Hollis's opinions can be supported without the simulation.  The Court, therefore, must analyze the

reliability of the simulation conducted.

Neither side cites any law involving challenges to the methodology used for a simulation.  Nor

does either side cite any reference materials regarding generally accepted techniques in the scientific

community for conducting the type of simulation performed by Dr. Hollis.  Instead, Plaintiff's

argument is a common sense argument that if there are material differences between the actual occurrence and the simulation, the simulation is unreliable.

Initially, the Court disagrees that the simulation must replicate exactly all of Plaintiff's activities during the CTT for it to be reliable. Plaintiff alleges that she was injured while swinging the sledgehammer. It is irrelevant, therefore, that the simulation did not have the model run up and down stairs. It also is irrelevant that the model's medical history is unknown. Any variations in the swing of the hammer, the grip while swinging the hammer, the type of hammer, the use of a railroad tie instead of a Keiser machine, and the distance the railroad tie were driven or the length of time that the hammer was used do not make the simulation unreliable. Any differences may be addressed on cross-examination and in argument.

The Court viewed both the simulation performed by Mark Principi, which Plaintiff said was an accurate representation of her movements while swinging the sledgehammer,[3] and the simulation performed by Dr. Hollis's model and found no significant difference in the grip or swing used. Further, the CTT was designed to use either a railroad tie or a Keiser machine, the inference being that the two are substantially similar. The fact that Dr. Hollis used the railroad tie for his simulation while Plaintiff used the Keiser machine in the CTT does not affect reliability of the simulation.

Plaintiff also contends that the model's failure to wear the bunker gear worn by Plaintiff during the CTT test effects the reliability of the simulation. What Plaintiff ignores is that Plaintiff's own expert, Dr. Proctor, did not have his model wear the bunker gear when he made the measurements that form the basis of his opinion. Indeed, Dr. Proctor stated that wearing the bunker gear was not

---

[3] Plaintiff's depo., p. 91:4-8, Ex. 9. Docket 62 at 5.

important for the positioning of the equipment. [Proctor depo., 103:23-104:11, Defendant's Exh. D, Docket 52 at 2.]    Plaintiff's attack on Dr. Hollis's methodology, therefore, rings hollow.

Similarly, Plaintiff tries to attack Dr. Hollis's methodology because he did not measure the force generated when the backpack met the model's neck by using a pressure sensor.  Again, Plaintiff's expert, Dr. Proctor did not calculate the force generated by the motion of the backpack in his report.  Dr. Proctor states that no one can know the amount of force required to cause Plaintiff's injury, because no one can know the Plaintiff's susceptibility to injury. [Proctor depo., 93:3-6, Defendant's Exh. D, Docket 52 at 25.]  Plaintiff cannot have it both ways.  If Plaintiff does not need to prove the amount of force generated when the backpack hit Plaintiff's neck, Plaintiff cannot fault the reliability of Dr. Hollis's opinion when he does not measure the amount of force by use of a pressure sensor.[4]

Plaintiff's second argument for exclusion of Dr. Hollis's opinion relates to his opinion that the backpack was not defectively designed, developed, manufactured, marketed, assembled, tested, sold or distributed.  In his deposition,[5] Dr. Hollis testified that he did not conduct any detailed analysis of these matters.  Lacking a detailed analysis, Plaintiff argues that Dr. Hollis's opinion in this regard is unreliable.  Defendant's written response nowhere addresses this argument.

The burden of establishing qualification, reliability and helpfulness rests on the proponent of the expert opinion. Defendant wholly fails to respond to Plaintiff's argument, and therefore fails to

---

[4] The Court notes Defendant's argument that Dr. Hollis *did* measure the force generated by the backpack's movement by use of a different method.  Plaintiff does not argue that the method actually used by Dr. Hollis to measure the force was unreliable.

[5] Although Plaintiff cites page 84, the relevant testimony appears on page 184 of Dr. Hollis's deposition.  Docket 63 at 35.

demonstrate the reliability of this particular opinion. The Court, therefore, grants Plaintiff's motion in part. Dr. Hollis may not express the expert opinion that the backpack was not defectively designed, developed, manufactured, marketed, assembled, tested, sold or distributed.

## CONCLUSION

The Court denies Plaintiff's motion in limine to exclude Dr. Hollis's testimony because he is not a licensed engineer in the state of Florida. The Court grants in part and denies in part Plaintiff's motion in limine to exclude Dr. Hollis's testimony as unreliable under *Daubert*, and excludes Dr. Hollis's opinion that the backpack was not defectively designed, developed, manufactured, marketed, assembled, tested, sold or distributed.

**DONE** and **ORDERED** in Orlando, Florida on October ___18th___, 2005.

JAMES G. GLAZEBROOK
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record

-10-